IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JANE T. GUEVARA,

      Plaintiff,

     vs.                                         CIVIL NO. 01-0823 WJ/LCS

BEST WESTERN STEVENS
INN, INC.

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant's Motion for Summary Judgment, filed November 14, 2002 **(Doc. 22)**, and Plaintiff's Motion for Appointment of Counsel, filed December 12, 2002 **(Doc. 27)**. The Court docket for this case indicates that Plaintiff was represented by counsel at one point, but is now proceeding *pro se*. (Docs. 18, 20). Plaintiff alleges discrimination on the basis of age and national origin, and retaliation resulting in termination of her employment at Best Western Stevens Inn, Inc. ("Best Western"). Having reviewed the parties' submissions and the applicable law, I find that Defendant's motion is well-taken and will be granted; and that Plaintiff's motion for counsel will be denied.

### Background

Plaintiff was employed at Best Western since May 1974 as head waitress and night manager. She was placed on administrative leave with pay on November 20, 2000, until December 31, 2000, at which time she was terminated. Plaintiff contends that Best Western

discriminated against her by increasing her responsibilities and job title without increasing her monetary compensation at a rate comparable to other employees with similar positions and responsibilities. She also claims that she was denied training opportunities that were offered to other supervisory level employees and that non-Hispanic employees experienced more lenient disciplinary actions for infractions of comparable seriousness.

Plaintiff's retaliation claim is based on the filing of an EEOC charge approximately six months prior to the time she was given notice of termination. In her portion of the Initial Pretrial Report, Ms. Guevara also mentions, without further detail, that her termination followed upon her initiation of a Workers' Compensation claim due to an on the job injury.[1] Defendant contends that her termination was not based on any illegal motive. Instead, Defendant maintains that her termination was the result of a series of work incidents, culminating in several written warnings to Plaintiff for conduct that warranted immediate dismissal under the personnel policy handbook.

## Discussion

*Summary Judgment Standard*

Summary judgment should be granted where, taking the facts in the light most favorable

---

[1] Plaintiff was employed at-will, but not having a contractual right to employment does not preclude Plaintiff from bringing claims against her employer which are based on constitutional violations. Nelson v. Geringer et al., 295 F.3d 1082, 1099 (10th Cir. 2002) (citing Board of Regents v. Roth, 408 U.S. 564 (1972) (while it is true that an employee dismissed by the state who is suing for procedural due process must demonstrate a property interest in her former position, the requirement of a property interest has absolutely no application to claims of substantive constitutional violations by the state); cmp., Perry v. Sindermann, 408 U.S. 593, 596-98 (1972) (lack of contractual right to employment does not defeat claim of dismissal in violation of First Amendment).

to the non-moving party,[2] there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party must present enough evidence to allow a reasonable jury to find for the non-moving party, and cannot rest upon mere allegations or denials of the pleadings. Orback v. Hewlett-Packard Co., 97 F.3d 429, 432 (10th Cir. 1996); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**I.      Timeliness of Complaint**

As a threshold issue, Defendant asserts that Plaintiff's federal action is not timely. Plaintiff filed two EEOC complaints. For the first charge, filed on July 20, 2000, Plaintiff received the right-to-sue letter from EEOC on December 27, 2000. This charge alleged discrimination on the basis of age and national origin. The more recent charge was filed in January 2001, alleging retaliation for having filed the earlier EEOC charge. Plaintiff received a right-to-sue letter for this charge "on or about" April 19, 2001.[3]

Under 42 U.S.C. § 2000e-5(f)(1), a plaintiff has ninety days from the date she receives a right-to-sue letter in which to file her federal complaint. Plaintiff is correct that the Court docket indicates that the complaint was filed on July 18, 2002. This is just under the ninety-day period with regard to the more recent EEOC charge which alleges retaliation. Therefore, Plaintiff's

---

[2] The Court assumes as true the facts and allegations contained in the complaint as well as in Plaintiffs portion of the Initial Pretrial Report. See Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990) (in applying summary judgment standard, court reviews the factual record in the light most favorable to the nonmoving party).

[3] Both letters indicated that EEOC concluded there was no probable cause to find discrimination on the basis of age or national origin, or retaliation. Reply, Exs. B and D.

retaliation claims are timely.[4] Defendant, however, is correct in noting that the complaint is *not* timely with regard to Plaintiff's earlier EEOC charge alleging discrimination based on age and national origin. Thus, Plaintiff's claims of discrimination based on age and national origin should be precluded as untimely, and this Court should consider only the claims based on retaliation.

In an abundance of caution, given Plaintiff's *pro se* status, I will consider the discrimination claims as included within the scope of the later EEOC charge. See <u>Brown v. Hartshorne Public School Distr.</u>, 864 F.2d 680 (10th Cir. 1988) (judicial complaint may encompass any discriminatory acts like or reasonably related to the administrative charge. However, Plaintiff's discrimination claims fare no better under a very liberal construction, since dismissal of these claims is appropriate on the merits according to the findings I make below.

**II.    Res Judicata**

Plaintiff is incorrect as to the binding effect of the decision made by the New Mexico Department of Labor ("NMDOL") regarding her discharge, which established that Plaintiff was not fired for misconduct "within the meaning of the Unemployment Compensation Law." Under that law, an employee would not be entitled to unemployment benefits if discharged for reasons constituting "misconduct connected with the work." Pltff's Ex. 1. The NMDOL finding is neither binding on this Court, nor relevant to the issues in this case. The sole purpose and effect of the NMDOL finding is relegated to the issue of whether Plaintiff would receive unemployment benefits. Further, "misconduct" is specifically and narrowly defined as requiring "such callousness, and deliberate or wanton misbehavior that they have given up any reasonable

---

[4] Defendant represents, incorrectly, that the complaint was filed on November 7, 2001. Statement of Undisp. Facts, ¶ 29. According to the Court docket, November 7th is the date on which summons was issued on Jeff Neal, Best Western's general manager.

expectation of receiving unemployment benefits." Ex. 1 at 2. Whether Plaintiff exhibited the requisite behavior to warrant a denial of unemployment benefits has no bearing on whether she has presented a prima facie case of discrimination, or whether her conduct at work warranted cause for dismissal under Best Western's policies such that Defendant's actions could be considered legitimate and non-discriminatory.[5] Also, as Defendant notes, § 51-1-55 N.M.S.A. 1978 specifically prohibits findings such as those made by the NMDOL from being applied to bar suits that are adjudicated.

### III.   Plaintiff's Claims in General

Plaintiff's claims are alleged under the "Age Discrimination in Employment Act," §§29 U.S.C. 621-634 ("ADEA") and Title VII, 42 § U.S.C.A. 2000e to 2000e-17.[6] Claims brought under the ADEA are analyzed under the same shifting burden framework set out under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973) which is applied routinely to Title VII cases. Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993); Munoz v. St. Mary-Corwin Hospital et al.,221 F.3d 1160 (10th Cir. 2000). This framework requires a plaintiff to satisfy the

---

[5] Defendant would not be liable for Plaintiff's termination even if the presented reasons were pretextual, as long as the true reason is not based on discriminatory motive. E.g., Rakovich v. Wade, 850 F.2d 1180, 1192-93 (7th Cir. 1987) (retaliation must motivate the defendants, not generic dislike); Fisher v. Vassar College, 114 F.3d 1332, 1337 & n.3 (2d Cir. 1997) (fact that defendant's proffered reason was false does not necessarily mean that the true motive was the illegal one argued by plaintiff) (citing Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1399 (7th Cir. 1997) (listing various non-discriminatory reasons for an employer's pretextual explanation), abrog. on other grds by Reeves v. Sanderson Plumbing Prod. Inc., 530 U.S. 133 (2000)).

[6] Plaintiff loosely alleges jurisdiction under 42 U.S.C. § 1981 and § 1983, without any supporting allegations. Defendant notes, and I agree, that Plaintiff's claims lend themselves more easily to an analysis (liberal though that may be, given her *pro se* status) under Title VII and the ADEA.

5

initial burden of articulating a prima facie case. Ms. Guevara has not done so in this case, for any of her claims.

Liberally construed, Plaintiff's Title VII claims encompass a variety of theories: discrimination based on disparate discipline, wrongful termination, denial of promotion or training and retaliation. I turn first to Plaintiff's claim of disparate discipline, since the analysis of the prima facie case differs slightly from that pertaining to claims of discharge and denial of promotion. Also, this issue offers an appropriate background in which to set out the round of disciplinary actions taken by Defendant - actions which Defendant contends led to Plaintiff's discharge.

**III.   Disparate Discipline**

A prima facie case of disparate discipline may be established if the plaintiff proves by a preponderance of the evidence that (1) the plaintiff is a member of a protected class, (2) the plaintiff was disciplined by the employers, and (3) the employer imposed the discipline "under circumstances giving rise to an inference of . . . discrimination." Jones v. Denver Post Corp., 203 F.3d 748, 753 (10th Cir.2000). Assuming here that the first two elements are satisfied, Ms. Guevara can meet the last element of a prima facie case by showing that Best Western treated similarly situated employees less favorably. Id.

Defendant presents considerable evidence pertaining to the disciplinary actions taken which culminated in Plaintiff's discharge. The evidence, attached to the affidavit of Jeff Neal, general manager of Best Western,[7] is in the form of notes and informal incident reports apparently

---

[7] Mr. Neal was responsible for all aspects of operation of Best Western and had the authority to hire, fire or discipline employees.

created contemporaneously with the underlying incidents and generated by Plaintiff's supervisors and co-workers.

Ms. Guevara received four written warnings of misconduct prior to her termination. Each of these warnings is accompanied by several sets of internal notes following several meetings and following chronological events over several days. The actual written warnings are issued on a form used by Best Western specifically for that purpose, called "Best Western Stevens Inn, Employee Disciplinary Report." The accompanying notations are in the form of either handwritten or typewritten notes which are similar to informal incident reports, and appear to have been made contemporaneously with the incidents as they occurred.

Plaintiff received her first warning of misconduct in September, 1999. She had gone to one of her supervisors and accused another waitress named Jodi, of pocketing tips.[8] According to the evening supervisor's notes following meetings with Ms. Guevara and Jodi, Plaintiff had visited Jodi's sister-in-law at her workplace, and told the sister-in-law that Jodi was "on drugs and constantly borrowing money from work" from customers. The sister-in-law contacted Plaintiff's supervisor and said that she had never suggested to Ms. Guevara that Jodi had a drug problem. She stated that although at first she felt Ms. Guevara was initially concerned for Jodi, she later felt that Plaintiff was "conniving and back-stabbing Jodi." Plaintiff received a disciplinary report based on a breach of confidentiality with respect to information shared with supervisors about other employees. Deft's Mem., Ex. F.

Ms. Guevara received a second written warning from Misty Cryer, one of her immediate supervisors, in December 1999 for a breach of security for allowing Casey, another employee, to

---

[8] Waitresses pooled and shared tips.

7

use her password to void tickets at the cash register. Notations were made by two supervisors (Misty Cryer and Kimberly Bryson) as well as Casey, the employee who claimed Plaintiff had given her the password. According to these notes, Plaintiff denied giving Casey the password, while Casey stated that "Jane [Ms. Guevara] . . . asked her to void tickets in the past because Jane does not know the procedure." Ex. G.

In May of 2000, Plaintiff was given another written warning, this time for failing to follow the chain of command by complaining to the owners of the Best Western facility at home instead of taking complaints to her supervisors. Notations about this incident were generated by General Manager Jeff Neal as well as Plaintiff's immediate Misty Cryer and Diane Moore. According to these internal memos indicate that Plaintiff would complain about one supervisor to another, pitting one against the other, and trying to get other employees or managers into trouble. The general tenor of the statements is that Plaintiff's conduct was an old problem of which supervisors were growing weary,[9] and that it fomented a "hostile work environment" among employees and supervisory personnel. Ms. Cryer wrote that she felt that managers and supervisors in the past

> "have been intimidated by Jane because she has been allowed to carry her rein [sic] of terror [sic] for many years. She does not intimidate me and I want to see it brought to a halt."

Ex. G, memo of May 4th. The incident culminated in a written warning in which Plaintiff was ultimately counseled about being a "team player" and working with the managers, instead of against them.

In September of 2000, Plaintiff had a confrontation with another employee, "Tony," in

---

[9] Ms. Cryer described this last incident as "just a small matter in comparison to some of the shenanigans [Plaintiff] has pulled at the Stevens Inn." Ex. G, letter of May 4th.

8

front of dining room customers.  Piecing together the various memos memorializing the incident, it seems that when Tony had made a comment about the band making too much noise when setting up for "Tejano night," Plaintiff accused him of being a racist and bigot.  Tony later told Sandra Bauler, the dining room supervisor, that Plaintiff had embarrassed him in front of several customers with these statements.  According to Ms. Bauler's notes, Tony explained to Plaintiff that he was not commenting on the race of the band, but just that the band made too much noise when the bar crowd was coming in for happy hour trying to "unwind."  Tony also said that he had complained to Ms. Bauler about the noise the band was making and that the supervisor had not taken the comment on the band to be racist.  Plaintiff's response was that Ms. Beuler's reaction to the comment could be explained by the color of her skin as compared to her own. Ex. J, memo of Sept. 19th.  Best Western issued a letter the following month advising dining room staff that confrontations were not to be conducted in the presence of employees and that such confrontations would be cause for immediate termination.  Neal Aff., ¶ AA; Ex. K, warning to Jane Guevara and Lori Waygood.

     Plaintiff received a final written warning on November 1, 2000, when Plaintiff was disciplined for improper conduct for arguing in the restaurant area with another employee, again in front of customers, concerning an incoming phone call from Plaintiff's grandson.  This was to be considered a "final warning that future occurrences of improper conduct will result in termination."  Ex. K.

     Defendant issued a termination letter to Plaintiff several weeks after this final warning, on the basis that she continued to violate the specific instructions contained in the final warning, and to conduct herself in "such a manner as to again create problems with . . . fellow employees." Ex. L.

9

The evidence supports Defendant's position that Plaintiff's termination was for legitimate reasons, and was based on conduct which could be characterized as insubordination and creating a hostile work atmosphere -- grounds for dismissal on first occurrence under the personnel handbook.  Plaintiff does not offer any evidence which could be construed as issues of material fact.  She does not mention any employees or incidents which could be construed as a factual basis for the bald allegation that she "received reprimands and disciplinary action for actions for which other non-Hispanic employees have not been disciplined," Compl., ¶ 7, or which could be taken as evidence of pretextual conduct by Defendant.

Plaintiff's burden is not onerous, since a comparison between similarly situated minority and non-minority employees need not be based on identical violations of identical work rules -- the violations need only be of "comparable seriousness."  McAlester v. Utd Air Lines, Inc., 851 F.2d 1249, 1261 (10th Cir. 1988).  Yet Plaintiff offers no facts or circumstances which the Court can use as a source of comparison to support a threshold finding that she was treated less favorably.  See, e.g., Hanlen v. Henderson, No. 99-1307, 2002 WL 628205 (10th Cir.(Colo.), May 16, 2000)(prima face case of discriminatory discipline not met where plaintiff did not show disparate treatment of other, similarly-situated employees).  Having failed to present a prima facie case under this theory, Plaintiff's claim of disparate discipline will be dismissed. Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir.1997) (On summary judgment, a plaintiff must simply raise a genuine issue of material fact on each element of the prima facie case), cited in Hardy v. S.F. Phosphates Ltd Co., 185 F.3d 1076, 1080 (10th Cir. 1999).

I note that even if Plaintiff had successfully cleared the minimal hurdle of a prima facie case, her claim of disparate or discriminatory discipline would still fail, giving the substantial documentation supporting Defendant's position that Plaintiff was discharged for cause and

10

Plaintiff's failure to present evidence which would suggest that Defendant's stated reasons were pretextual.  Because Defendant does not bear the ultimate burden of persuasion at trial, it will be entitled to summary judgment by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998).  Plaintiff offers no evidence which would give rise to a dispute or material fact such that a rational jury could find that Best Western disciplined Plaintiff on the basis of either her age or national origin.  Defendant is entitled to summary judgment on Plaintiff's disparate discipline claim.

**IV.    Age discrimination (ADEA claim), and Title VII claims based on termination, denial of promotion or training.**

Plaintiff's other contentions based on age discrimination, and the claims of discriminatory termination and denial of promotion under Title VII meet a similar fate. The usual prima facie case for discrimination in employment cases is a showing that plaintiff (1) belongs to a protected class; (2) she was qualified for her job (or a position sought); (3) despite her qualifications, she was discharged (or was rejected for the position); and (4) the job was not eliminated after her discharge. Perry v. Woodward, 199 F.3d 1126, 1138 (10th Cir. 1999), cert denied, 529 U.S. 1110 (2000)(citing Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1174-75 (10th Cir.1996)).  In this case, it is unclear whether Ms. Guevara's position was filled by another individual or remained vacant after her discharge.  This issue need not be resolved, since this circuit has held that the fourth element of the prima facie test is met whether or not someone else was hired to fill the job vacancy created by a plaintiff's discharge. Id. (citing Mohammed v. Callaway, 698 F.2d 395, 398 (10th Cir. 1983) (holding that the fact the position was filled, instead of remaining open,

11

did not preclude employee from establishing a prima facie case).[10] Ultimately, the evidence which a plaintiff must present in order to support an inference of discrimination depends on the facts of each case. Id.

Unfortunately, Ms. Guevara's claims suffer from a lack of facts which would support any version of a prima facie case. This Court will assume that Plaintiff is a member of a protected class and that her job performance was satisfactory. Still, she has not demonstrated a prima facie case of discriminatory discharge, or failure to promote on the basis of age or national origin. Ms. Guevara does not specify what position or training she sought but was denied, or what circumstances led her to believe that she was denied (or would have been denied),[11] training or promotions because of her Hispanic origin. Cmp.,Traylor v. Brown, 295 F.3d 783 (7th Cir. 2002) (employer's refusal to allow plaintiff to do higher level jobs was not adverse employment action where plaintiff she provided no evidence that duties she wanted to perform were important

---

[10] The flexibility of the elements in a Title VII prima facie claim can accommodate the different factual situations. specific in any case. See Perry, 199 F.3d at 1134, citing International Brotherhood of Teamsters v. U.S., 431 U.S. 324, 358 (1977). Because the McDonnell Douglas test is a flexible one, Greene v. Safeway Stores, Inc., 98 F.3d 554, 560 (10th Cir.1996), the prima facie case may be "adapted to the particular type of adverse employment decision in question." The basic requirement is that "there must be a logical connection between each element of the prima facie case and the inference of discrimination." Perry,199 F.3d at 1136, cert denied 529 U.S. 1110 (2000). Thus, in some factual scenarios, even an elimination of a plaintiff's position could leave a plaintiff's prima facie case intact. Id., 199 F.3d at 1140, n.10. This flexibility extends to various theories of discrimination. For example, a discharged plaintiff alleging age discrimination no longer needs to show that she was replaced by a member of an unprotected class, i.e., a younger person, so long as she can show that she was discharged because of her age. O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996); Safeway Stores, 98 F.3d at 558 (fact that one person in protected class has lost out to another person in protected class is irrelevant, so long as he has lost out because of his age).

[11] A plaintiff's failure to apply for a specific job is not necessarily fatal to her Title VII claims. However, in the very least, the record should suggest "as a reasonable inference, that [plaintiff] would have applied for specific positions had [she] known of their availability." Taylor v. Canteen Corp., 69 F.3d 773, 781 (7th Cir. 1995).

to achieve higher position for which she was otherwise qualified).

In response to summary judgment, Plaintiff either simply disagrees with Defendant's characterization of her conduct for the incidents which resulted in disciplinary actions,[12] or attempts to explain her side of these incidents. Ms. Guevara's version of the stories involving background details of the incidents, without more, is not sufficient to preclude summary judgment. For example, Plaintiff gives her reasons why she thought her coworker, Jodi, was using drugs (Resp. to Undisp. Fact No. 14). She also states (without any documentation), that because of her long employment with the hotel, the hotel's owners had instructed Plaintiff to contact them directly in the event of problems (Resp. to Undisp. Fact No. 27); that she was told that a supervisor who had access to her password had actually given it to another waitress (Resp. to Undisp. Fact No. 24); and that she did not conduct a "confrontation" in front of customers (Resp. to Undisp. Fact. No. 28). None of these facts are material for purposes of summary judgment, because even if Plaintiff's statements create disputes of fact, they are not material. These statements of "fact" do not give rise to an inference of discrimination, nor do they undercut Defendant's position that its actions were taken on the basis of what it had reason to believe was misconduct that warranted disciplinary action.[13] See McKnight v. Kimberly Clark Corp. et al, 149 F.3d 1125 (10th Cir. 1998) (termination of employee based on allegation of harassment by co-worker, which later turned out to be false, was not pretextual, based on employer's good faith

---

[12] See, e.g., Pltff's Resp. to Undisp. Fact 13, Resp. at 3: "Plaintiff disagrees with Defendant's Fact No. 14 that she had engaged in "misconduct and breach of confidentiality."

[13] An employer's reasons for adverse action are not appropriately brought as a challenge to the sufficiency of a plaintiff's prima facie case. Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1470 (10th Cir. 1992). However, those reasons are properly considered in addressing whether those articulated reasons are legitimate or merely a pretext for discrimination. Thomas v. Denny's, Inc. 111 F.3d 1506 (10th Cir. 1997).

belief in co-worker's allegations); Bruno v. City of Crown Point, 950 F.2d 355, 364 (7th Cir. 1991), cert. den., 112 S.Ct. 2998 (1992) (neither § 1981, 1983 or Title VII makes an employer liable for simply erroneous or arbitrary decisions)(quoting Nix v. WLCY Radio, 738 F.2d 1181, 1187 (11th Cir. 1984)).

Under the McDonnell-Douglas approach, a plaintiff retains the ultimate burden of demonstrating that a defendant's conduct was illegally motivated. See St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2749 (1993). Although Ms. Guevara is proceeding *pro se*, the Court will not supply additional facts in order to bolster her claims. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991); Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989), cert. den., 493 U.S. 1059 (1990). It is undisputed that displays of conduct and behavior such as those characterized on the four written warnings received by Plaintiff warranted immediate dismissal under Best Western's policy handbook. Plaintiff was written up by more than one supervisor for incidents that involved more than one co-worker or supervisor. Defendant has provided considerable evidence which establishes that Plaintiff's behavior justified immediate dismissal of Plaintiff under Best Western's policy manual. On the other hand, Plaintiff has presented no evidence which, viewed favorably toward Plaintiff, would suggest that Defendant's actions were pretextual or otherwise based on a discriminatory motive. Therefore, Defendant is entitled to summary judgment on Plaintiff's age discrimination claims and Title VII claims based on discriminatory discharge, and denial of training and promotion.

On summary judgment, a plaintiff must simply raise a genuine issue of material fact on each element of the prima facie case. Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir.1997), cited in Hardy v. S.F. Phosphates Ltd Co., 185 F.3d 1076, 1080 (10th Cir. 1999) Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (burden of showing that no genuine

issue of material fact exists is borne by the moving party). In sum thus far in the analysis, Ms. Guevara has not done so on any of her claims of discrimination based on age or national origin relating to her termination, denial of promotion, or disciplinary actions that were taken which resulted in her termination. Nor has she provided evidence which could be considered issues of material fact on the question of whether Defendant's actions were pretextual or otherwise illegally motivated.

**V. Retaliation (Title VII)**

A plaintiff claiming unlawful retaliation for asserting a Title VII or ADEA claim also bears the initial burden of establishing a prima facie case. Ms. Guevara must show that: 1) she was engaged in opposition to Title VII or the ADEA; 2) she was subjected to adverse employment action; and 3) a causal connection existed between the protected activity and the adverse employment action. See Gunnell v. Utah Valley State College, 152 F.3d 1253, 1262-63 (10th Cir. 1998).[14] As stated above, Plaintiff's retaliation claims were timely filed.[15] Having filed an EEOC claim, and having been discharged, Plaintiff clearly meets the first two parts of the prima facie case. Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir.1999) (filing an EEOC claim qualifies as protected activity); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits").

---

[14] Retaliation claims under Title VII are subject to the burden-shifting analysis of McDonnell Douglas. Jones v. Denver Post Corp., 203 F.3d 748, 752 (10th Cir.2000).

[15] The earlier EEOC charge alleging discrimination based on age and national origin, are not relevant here, although claims based on these theories have been considered in these findings.

15

Close temporal proximity between the employee's complaint and the adverse employment action is a factor in determining whether the employer's proffered reason is a pretext for retaliation. Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 551 (10th Cir.), cert. denied, U.S. ----, 120 S.Ct. 48, 145 L.Ed.2d 42 (1999. The period between the filing of the July 2000 EEOC claim and Plaintiff's discharge at the end of November 2000, is too wide a time period to be considered as factor supporting pretextual conduct. Hysten v. Burlington Northern & Santa Fe Railway Co., 296 F.3d 1177 (10th Cir. 2002) (almost 3 months between time of plaintiff's lawsuit and alleged retaliatory act not close enough to establish causation);O'Neal v. Ferguson Const. Co., 237 F.3d 1248, 1252 (10th Cir. 2001) (three-month period, standing alone, is insufficient to establish causation) (citing Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir.1999) (citation omitted)).

However, because the Tenth Circuit "liberally defines "adverse employment action," Jeffries v. State of Kansas et al., 147 F.3d 1220, 1232 (10th Cir. 1998), I should consider the reprimands and disciplinary warnings Plaintiff received in the context of Plaintiff's retaliation claims. Roberts v. Roadway Express, 149 F.3d 1098, 1103 (10th Cir. 1998)(written warnings issued to employee were "adverse employment actions," required for prima facie case of retaliation under Title VII, inasmuch as, under employer's policies, the more warnings an employee received, the more likely he or she was to be terminated for a further infraction). Three of the disciplinary actions must be eliminated from this analysis because they occurred *prior* to the protected activity, i.e., prior to July 20, 2000 when the first EEOC charge was filed. Coors Brewing Co.,181 F.3d at 1179 n.2 ("adverse action" must occur *after* protected activity - not *before*) (emphasis added). These are the September 1999, December 1999 and May 2000 incidents.

16

The only incidents which can be considered, then, are the October and November 2000 incidents, both of which involved confrontations with co-workers in front of customers, as described above. Here again, the first of these allegedly adverse actions occurred three months from the time Plaintiff filed the EEOC claim, too wide a time period to constitute a causal connection for purposes of meeting a prima facie case of retaliation. A plaintiff can demonstrate intentional retaliation by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1317 (10th Cir.1999). A plaintiff need not affirmatively demonstrate that retaliatory reasons motivated an employer's decision, but "mere conjecture that [the] employers's explanation is a pretext . . . is an insufficient basis for denial of summary judgment." Bausman v. Interstate Brands Corp., 252 F.3d 1111 (10th Cir. 2001) (citation omitted). As with her claims of discrimination, Ms. Guevara has not shown an inference of illegal retaliatory motive on the part of Defendant. Even assuming Plaintiff satisfied the requirements of a prima facie case, no reasonable juror would find that Plaintiff's discharge or the string of documented disciplinary actions were a cover for retaliating against Plaintiff because she filed the EEOC claim. Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

**VI.     Motion for Appointment of Counsel**

A plaintiff asserting an employment discrimination claim has no constitutional or statutory right to appointed counsel. Castner v. Colorado Springs Cablevision, 979 F.2d 1417 (10th Cir.1992); cited in Vasquez v. U.S.Office of Personnel Management, 847 F.Supp. 848, 849 (D.Colo. 1994). Title VII of the Civil Rights Act of 1964, however, provides that the district court may, in its discretion, appoint counsel for a plaintiff in an employment discrimination action.

17

42 U.S.C. § 2000e-5(f)(1) states that "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security."   While this provision does not create a statutory right to have counsel actually appointed, it does give civil rights plaintiffs a right to request representation.  Poindexter v. F.B.I., 737 F.2d 1173 (1984).[16]

Courts have an obligation to carefully consider requests for appointments of counsel in Title VII cases.  However, to avoid discouraging attorneys from donating their time, indiscriminate appointment of counsel should be avoided.[17]  Castner, at 1421.  Before counsel may be appointed, a plaintiff must make affirmative showings of (1) financial inability to pay for counsel, (2) diligence in attempting to secure counsel and (3) meritorious allegations of discrimination.  Id. at 1420.  In "close" cases, the court should consider a fourth factor--the plaintiff's capacity to present the case without counsel-- as an aid in exercising discretion.

Plaintiff has presented the Court with a formidable list of attorneys she has apparently consulted.  Her efforts to obtain representation were unsuccessful, either because the attorneys Plaintiff contacted decided not to take her case after consultation, told her a conflict existed, or

---

[16] Poindexter points out that it is not clear whether the court would be empowered to *compel* representation.  Instead, there is strong expectation that the local bar would be "responsive to judicial requests." 737 F.2d at 1190 n.50; but, cmp. Scott v. Tyson Foods, Inc., 943 F.2d 17, 19 (8th Cir. 1991) (relying on comparison in language of 42 U.S.C. § 2000e-5(f)(1) and 28 U.S.C. § 1915(d) and finding that §2000e-5(f)(1) confers upon district courts the coercive power to require attorneys to represent plaintiffs in Title VII cases, within their discretion) and Bradshaw v. U.S. Distr. Court for the Southern Distr. of Calif., 742 F.2d 515 (9th Cir. 1984) (on remand for appointment of counsel, district court did not abuse its discretion, or violate intent of remand order, by not making coercive appointment of counsel, when counsel could not be located to voluntarily assist plaintiff in her Title VII case).

[17] Congress provided no mechanism for compensating attorneys within the statute.

never returned her calls.

Plaintiff indicates that she is a "low-income 62 year old widow" but has not otherwise demonstrate financial inability to secure representation of counsel. The fact that it is "merely burdensome to pay counsel is not sufficient." Arnold v. Speedgrip Chuck, Inc. 524 F.Supp. 679 (D.C.Ind. 1981) (citations omitted). Assets and income need to be insufficient to afford an attorney to investigate and file a claim. Reado v. Texas Gen'l Land Office, 929 F.Supp. 1046, 1052 (E.D.Tex. 1996). Plaintiff in this case has paid the filing fee in July of 2001, and discovery has been proceeding since January of 2002. While I could allow Plaintiff opportunity to provide the Court with further documentation to support her statement that she is unable to afford an attorney, there is no reason to do so. As set forth in the above findings, her case has no merit and thus does not satisfy the third factor I must consider in determining whether counsel should be appointed.[18] Further, a review of the pleadings, including the response to Defendant's summary judgment motion as well as the motion to request counsel, indicate that Plaintiff clearly has the capacity to present her case without aid of counsel. Therefore, Plaintiff's motion for appointment of counsel is denied.

**THEREFORE**,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment **(Doc. 22)** is hereby GRANTED;

---

[18] As Defendant points out, the Seventh Circuit allows the court to rely in part on the EEOC's findings in analyzing this factor. See Robinson v. Western Electric, 3 F.E.P. 846, 1971 WL 2679 (7th Cir. 1971), cited in Arnold v. Speedgrip Chuck, Inc. 524 F.Supp. 679 (D.C.Ind. 1981). The Tenth Circuit has not provided any guidance on this exact question. I note, however, that both of Ms. Guevara's EEOC claims in this case resulted in determinations of no probable cause.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel (**Doc. 27**) is hereby DENIED.

_____
UNITED STATES DISTRICT JUDGE